UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

KINSALE INSURANCE COMPANY,

    Plaintiff,

v.                                              CASE NO: 6:18-cv-01239

BRANDON STEVEN MOTORS, LLC and
EDDY'S MOTORS, LLC

    Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

KINSALE INSURANCE COMPANY ("Kinsale") sues BRANDON STEVEN MOTORS, LLC and EDDY'S MOTORS, LLC (together, "BSM"), and alleges:

### NATURE OF ACTION

1. This action involves a fundamental principle in insurance law that an insured should not profit from insurance or be placed in a better position than before an alleged loss. Specifically, Kinsale seeks a declaration that BSM is not entitled to coverage under its excess policy because, among other things, it sustained no actual loss and, in fact, sold the purportedly damaged vehicles for a profit.

### JURISDICTION AND VENUE

2. Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper because all of the events giving rise to the claim, including the alleged loss, occurred in this district.

4. To the extent there are any conditions precedent which must be satisfied before Kinsale may bring the claims herein, which Kinsale denies, such conditions precedent have

occurred, been performed, or have been waived.

## THE PARTIES

5. Kinsale is an Arkansas corporation with its principal place of business in Richmond, Virginia. For purposes of this lawsuit, Kinsale issued an excess property insurance policy to Brandon Steven Motors, LLC and Eddy's Motors, LLC as the Named Insureds.

6. Brandon Steven Motors, LLC, a car dealership, is a Kansas limited liability company that has its principal place of business in Wichita. Upon information and belief, the members of the company are Brandon J. Steven and Rodney L. Steven II, both of whom are Kansas residents.

7. Eddy's Motors, LLC, also a car dealership, is a Kansas limited liability company with its principal place of business in Wichita. Upon information and belief, the members of the company are Brandon J. Steven and Michael Steven, both of whom are Kansas residents.

## COMMON ALLEGATIONS

8. **THE CLAIM**: On 03/21/2018, BSM notified Kinsale of a claim for alleged damage to vehicles at eight of its car dealerships (collectively, the "Vehicles").

9. According to BSM, two weeks earlier, on 03/06/2018, winds blew dust particles that affected the Vehicles' surfaces.

10. In total, BSM claimed that +1,200 Vehicles, new and used, were affected.

11. Kinsale's investigation revealed that the Vehicles visually appeared to be in excellent condition.

12. **THE ALLEGED DAMAGE:** BSM identified granule-size specks on the Vehicles, undetectable by visual inspection, and claimed they were caused by wind on 03/06/2018.

13. By BSM's own admission, the specks, in most instances, were not visible to the

naked eye.

14. Moreover, there is no evidence that the granule-sized specks on the Vehicles were caused by wind, much less wind on 03/06/2018.

15. No highly detailed inspections of the Vehicles were performed prior to 03/06/2018.

16. The granule-sized specks could have been caused at any time during the life of the Vehicles by any number of causes.

17. A significant number of Vehicles had been driven thousands of miles prior to 03/06/2018.

18. Although the specks did not impair the Vehicles' value, BSM demanded payment for the significant cost of removing and repairing every section of the Vehicles with a speck.

19. ***BSM SELLS THE VEHICLES FOR A PROFIT***. Despite its claim, BSM actually sold the Vehicles above acquisition cost and at or near full price.

20. BSM ultimately profited from its sale of the Vehicles.

21. No repairs were made to the Vehicles.

22. Alternatively, to the extent BSM sustained loss, it has been fully indemnified.

23. ***BSM RECEIVES $2,500,000 IN INSURANCE PROCEEDS***. Despite incurring no repair costs or value impairment, BSM received $2,500,000 from its primary insurer for the Vehicles in excess of its $500,000 deductible.

24. ***KINSALE REQUESTS INFORMATION:*** Kinsale requested the following information from BSM, which is critical to Kinsale's ability to complete its investigation evaluate coverage, and determine if BSM sustained an actual loss in excess of the primary limits:

> Documentation evidencing your interest in the vehicles on the date of loss, March, 6, 2018, potentially including, but not limited to, title documents, bills of sale, and floor plan agreements.
>
> Any floor plan insurance policies covering any of the affected vehicles, including any certificates of insurance issued to you or on your behalf in connection with any such policies.
>
> Any floor plan or inventory financing agreements covering any of the affected vehicles.
>
> Any repairs, proposals, and/or quotes you have obtained to repair any of the claimed damages.
>
> Documentation evidencing any repairs of the alleged damage conducted by you or on your behalf, including, but not limited to, invoices, receipts, proposals, and/or estimates.
>
> Sales receipts, invoices, and related transfer documents for vehicles included in your claim but which have since been sold to third-parties.

25. ***BSM FAILS TO COOPERATE***: BSM failed to provide Kinsale with complete information despite Kinsale's repeated requests.

26. BSM has not provided documentation evidencing its ownership interests in all Vehicles at the time of the purported loss.

27. BSM's floor plan policy has not been produced.

28. No evidence regarding repairs of any kind was provided to Kinsale.

29. The sales data for the Vehicles was withheld and in some cases redacted so that Kinsale would not know the actual sales price.

30. ***THE KINSALE EXCESS POLICY****:* Kinsale issued an excess property insurance policy to "Brandon Steven Motors" and "Eddy's Motors" as the Named Insureds, bearing Policy No. 0100049482-0, and effective March 30, 2017 to September 30, 2018 (the "Excess Policy"). A copy of the policy is attached as Exhibit "A."

31. The limit of insurance under the Excess Policy is $2,500,000 in excess of the

$2,500,000 "each occurrence" limits under the primary policy and all applicable deductibles.[1]

32. The Excess Policy provides, in pertinent part:

**A.     INSURING AGREEMENT:**

**1.** The Company will indemnify the Insured for our share, as shown in Item 1. of the Declarations Page of this Policy, of the Ultimate Net Loss caused by the direct physical loss or damage to Covered Property in excess of the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance of this Policy, occurring during the policy period. This agreement is subject to the following terms, conditions, and any endorsements to this Policy.

**2.     Application of Underlying Provisions – Follow Form:**

The coverage or perils insured in this Policy are subject to the terms, conditions, definitions, limitations, exclusions and warranties contained in the policy(ies) of the Primary Insurer(s) as shown in Schedule of Underlying Insurance of this Policy, to the extent there is no conflict with this Policy. In the event the terms, conditions, definitions, limitations, exclusions, warranties or any other provisions contained in the Primary and Underlying Excess Insurance as shown in Schedule of Underlying Insurance of this Policy, respectively, are inconsistent or conflict with the terms of this Policy, this Policy shall apply.

* * *

**3.     Attachment of Liability:**

It is expressly agreed that our liability under this Policy shall attach to the Company only after the Primary and Underlying Excess Insurer(s) have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss.

**G.     SALVAGE AND RECOVERIES:**

All salvages, recoveries and payment recovered or received subsequent to loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

* * *

---

[1] The applicable deductible for wind/hail claims is $1,500 per vehicle, subject to a $100,000 per location maximum, a $500,000 per occurrence maximum.

H. **DEFINITIONS:**

1. **Ultimate Net Loss** shall mean the actual loss sustained by the Insured as a direct physical result of the peril(s) insured against by the policy(ies) of the Primary and/or Underlying Excess Insurer(s) limited by:

    a. Any sub limits contained within this Policy or the policy(ies) of the Primary and/or Underlying Excess Insurer(s), and

    b. Making deductions for any salvage and recoveries from any source other than this Policy and the policy(ies) of the Primary and/or Underlying Excess Insurer(s).

3. **Covered Property** shall mean that property that is insured and not excluded in the Primary and Underlying Excess Insurance as shown in the Schedule of Underlying Insurance this Policy.

33. The Excess Policy contains the following endorsement (Form PRP2017 0110) titled "Common Conditions – Property," which provides in relevant part:

**COMMON CONDITIONS – PROPERTY**

This endorsement modified insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE

\* \* \*

9. **OTHER INSURANCE**

    This Policy shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly, covering, the same property against the same perils and this Company shall be liable for the direct physical loss or damage only for the excess value beyond the amount covered under such other insurance whether collectible or not.

34. The terms, conditions, and exclusions of the Excess Policy quoted and cited herein are for illustrative purposes only, and in no way should be construed as a full and complete recitation of all terms, conditions, and exclusions which may bear on the coverage issues presented in this matter. Kinsale reserves all rights to invoke, cite, or rely upon additional

or different terms, conditions, and exclusions in the Excess Policy as this matter progresses.

35. The underlying primary policy, Policy No. PR005L217, was issued by Aspen Specialty Insurance Company to BSM for the same policy period (the "Primary Policy"). A copy is attached as Exhibit "B."

36. The Primary Policy has an "each occurrence" limit of $2,500,000 and provides in pertinent part:

### DEALERS OPEN LOT COVERAGE

### TERMS AND CONDITIONS

**I.   DEFINITIONS:**

**AUTOMOBILE:** Except where specifically stated to the contrary, the word 'automobile' used in this Policy, or in any endorsements attached, shall include but not be limited to all types of private passenger cars, trucks, service vehicles, demonstrators, motorcycles, recreational vehicles, motor homes, watercraft while on land, trailers and semi-trailers that are <u>owned by the 'Insured', or are in the possession of the 'Insured' for consignment sale</u>. Vehicles Loaned or Rented to customers while the customer's Vehicle is in for Service.

* * *

**INSURED:** shall mean the Named Insured shown in the Declarations and its affiliated, subsidiary, associated companies and/or corporations, interest in partnerships and/or joint ventures as now exist or may hereafter be constituted or acquired, and any participating dealer, in interest which the Named Insured is responsible to insure, to whom evidence of insurance has been provided, a copy of which is also on file with 'Us'.

**LOSS:** shall mean accidental, external, direct physical destruction, theft or damage to a covered 'automobile'

**NAMED LOCATION:** shall mean the location scheduled in the Evidence of Insurance for each participating dealer on file with 'Us'. 'Named Location' must be owned, rented or controlled wholly or in part by the participating dealer and used as a place for display or storage of an 'automobile'. Each 'Named Location' includes separate 'automobile'

display, storage and sales locations, if scheduled as such in the Evidence of Insurance on file with 'Us'.

\* \* \*

II. **INTERESTS INSURED:** The interest in an 'automobile' owned by, leased by or consigned for sale to an 'Insured' 'automobile' dealer. All provisions are binding on all parties of interest. However, the coverage provided to the 'Insured' will not be impaired by the failure of another party of interest to comply with all provisions, if the secured 'Insured' is diligent in trying to obtain compliance with all provisions.

III. **COVERAGES:** The coverage afforded hereunder is 'loss' caused by or resulting from 'Collision' and 'comprehensive' including 'Flood', 'Earthquake', Trick and Device and False Pretense, Theft, and Transit.

\* \* \*

VII. **EXCLUSIONS:**

\* \* \*

B. 'We' will not pay for 'loss' that is caused by, results from or arises out of one or more of the following:

\* \* \*

6. Wear and tear, any quality in the property that caused it to damage or destroy itself, hidden or latent defect, gradual deterioration, depreciation, structural, electrical or mechanical breakdown or failure, corrosion, rust, dampness, cold or heat unless a covered "loss" ensues. "We" will then pay for the resulting "loss".

8. 'Loss' to any 'automobile' that is insured under an 'automobile' inventory floor plan agreement or financing source, except as 'You' and the participating dealer are insured under this policy.

9. The Insured's prospective profit or overhead charges of any nature.

13. Damage which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage results from theft covered by this Policy.

\* \* \*

**IX.    CLAIMS REPORTING AND ADJUSTMENT**

* * *

3. PROOF OR LOSS. Within sixty (60) days after loss or damage, unless such time Is extended In writing by the Company, the Insured shall forward the Company a statement, signed and sworn to by the insured, stating the place, time and cause of the loss or damage, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon and all insurance, whether valid and collectible or not, covering the said property. The Insured, as often as required, shall submit to examination under oath by the person designated by the Company and subscribe the same. As often as required, the Insured shall produce for examination all books of accounts, bills, invoices and other vouchers or certified copies thereof, if the originals are lost, at such reasonable place as may be designated by the Company and shall, permit extracts and copies thereof to be made, The Company shall also be permitted to Inspect the Insured's premises and units.

37.   The Primary Policy contains the following relevant endorsements, which provide

in pertinent part:

**OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

In consideration of the premium charged, it is agreed that:
The following special terms and conditions apply to this policy:

**1.**   The Limit of Liability or Amount of insurance shown on the Declarations of this policy, or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence. Notwithstanding any other terms and conditions of this policy, in no event shall the liability of the Company exceed this limit or amount, irrespective of the number of locations involved.

The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties, arising out of one event. The duration and extent of any one loss, disaster, casualty or series of losses, disasters or casualties will be limited to all losses or series of losses occurring during any period of 72 consecutive hours arising out of, and directly occasioned by, the same event. When the term applies to loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil

commotion, vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than when the first loss occurs to any covered property. …

* * *

**GENERAL PRE-EXISTING DAMAGE EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

In consideration of the premium charged, it is agreed that:

This policy does not cover any loss or damage directly or indirectly caused by, resulting from, or contributed by, in whole or in part, any pre-existing damage to the insured premise(s) existing at the time of the loss, including, but not limited to, any loss or damage caused by:

 1. Rain, wind, flood, hurricane or other weather-related incident;

 2. Excessive sun, heat or moisture damage, due to internal building temperature, improper ventilation, or other structural, internal, or external conditions;

 3. Insects, bugs, vermin or other animal pests, including termites, ants, bees, wasps, beetles, moths, fleas, spiders, rodents (rats and mice); or
 4. Any earth movement such as an earthquake, landslide, sinkhole or other earth sinking, rising or shifting.

We will reduce any amount payable for loss under the policy if:

 1. The property was previously damaged prior to the effective date of this policy; or

 2. Payment was made for any previously damaged property that was not promptly repaired or replaced.

We will reduce the amount payable for loss to the damaged property by the amount of previous damage or the amount paid for the previous damage. We will further reduce the amount payable for loss to other property by the amount of damage which arises out of or as a direct result of the previously damaged property.

### COUNT I – NO COVERAGE UNDER THE INSURING AGREEMENT BECAUSE BSM DID NOT SUSTAIN AN ACTUAL LOSS

38. Kinsale incorporates paragraphs 1 through 37.

39. Under its insuring agreement, the Excess Policy insures "Ultimate Net Loss caused by the direct physical loss or damage to Covered Property."

40. "Ultimate Net Loss" is defined as "the actual loss sustained by the Insured as a direct physical result of the peril(s) insured against … limited by: … (b) making deductions for any salvage and recoveries from any source other than this Policy …."

41. BSM did not sustain "Ultimate Net Loss."

42. After accounting for salvage and recoveries, BSM sustained no actual loss and actually profited from the sale of the Vehicles.

43. Moreover, even if BSM sustained loss, it was under the primary limits of insurance and applicable deductibles.

44. Accordingly, Kinsale has no coverage obligations to BSM under the Excess Policy.

### COUNT II – NO COVERAGE UNDER THE INSURING AGREEMENT BECAUSE A COVERED LOSS DID NOT OCCUR DURING THE POLICY PERIOD

45. Kinsale incorporates paragraphs 1 through 37.

46. The Excess Policy provides that Ultimate Net Loss must be caused by the direct physical loss or damage to Covered Property that occurs during the policy period.

47. To the extent specks not visible to the naked eye constitute physical loss or damage, BSM cannot prove that the damage occurred during the policy period.

48. The granule-sized specks could have resulted from a host of other causes at any time during the life of the Vehicles.

49. Accordingly, because BSM cannot prove the specks were caused by wind on 03/06/2018, Kinsale has no coverage obligation to BSM under the Excess Policy.

### COUNT III – NO COVERAGE TO THE EXTENT THE PRIMARY POLICY IS NOT EXHAUSTED

50. Kinsale incorporates paragraphs 1 through 37.

51. The Primary Policy has a $2.5 Million "Per Occurrence" limit.

52. The term "Occurrence" means any one loss, disaster, casualty or series of losses, disasters or casualties, arising out of one event.

53. When the term applies to loss or series of losses from the perils of windstorm, one event is construed to be all losses arising during a continuous period of 72 hours.

54. Accordingly, to the extent the granule-sized specks were caused by more than one event or an event spanning more than 72 hours, there is more than one "occurrence" and the applicable limits of the Primary Policy have not been exhausted.

### COUNT IV – NO COVERAGE TO THE EXTENT THERE IS OTHER INSURANCE FOR THE VEHICLES

55. Kinsale incorporates paragraphs 1 through 37.

56. The Excess Policy is excess to any other insurance "directly or indirectly, covering, the same property against the same perils."

57. Similarly, the Primary Policy excludes coverage for any "loss to any 'automobile' that is insured under an 'automobile' inventory floor plan agreement or financing source."

58. Accordingly, to the extent BSM is seeking coverage for any Vehicles covered under any other insurance, Kinsale is excess over any such insurance.

### COUNT V- NO COVERAGE UNDER POLICY EXCLUSIONS

59. Kinsale incorporates paragraphs 1 through 37.

60. The Primary and Excess Policies exclude coverage for loss caused by, resulting from, or arises out of:

   a. Wear and tear, any quality in the property that caused it to damage or destroy itself, hidden or latent defect, gradual deterioration, depreciation, structural, electrical or mechanical breakdown or failure, corrosion, rust, dampness, cold or heat unless a covered "loss" ensues. "We" will then pay for the resulting "loss". (Exclusion 6; Primary Policy.)

   b. The Insured's prospective profit or overhead charges of any nature. (Exclusion 9; Primary Policy.)

   c. Damage which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage results from theft covered by this Policy. (Exclusion 13; Primary Policy.)

61. To the extent the loss arises out of wear and tear, gradual deterioration, or corrosion, Kinsale has no coverage obligations under the Excess Policy.

62. Additionally, to the extent BSM is seeking coverage for prospective profit or overhead charges, there is no coverage under the Excess Policy

63. Finally, to the extent the granule-size specks existed at the time of the loss, coverage is precluded under the General Pre-Existing Damage Exclusion Endorsement.

### COUNT VI– NO COVERAGE TO THE EXTENT BSM HAD NO INSURABLE INTEREST IN THE VEHICLES

64. Kinsale incorporates paragraphs 1 through 37.

65. There is coverage only for Vehicles that are "owned by the Insured, or are in the possession of the 'Insured' for consignment sale."

66. BSM has failed to provide evidence of its interest in the Vehicles.

67. Accordingly, to the extent BSM did not have an insurable interest in the Vehicles at the time of the purported loss, Kinsale has no coverage obligation to BSM.

## COUNT VII – NO COVERAGE BECAUSE BSM BREACHED THE POLICY'S TERMS AND CONDITIONS

68. Kinsale incorporates paragraphs 1 through 37.

69. As a condition of coverage, BSM is required to submit specific information and "produce for examination all books of accounts, bills, invoices and other vouchers."

70. Kinsale made several information requests to BSM needed to evaluate coverage but, to date, BSM has failed to comply.

71. BSM's failure to comply has substantially prejudiced Kinsale's ability to adjust the claim.

72. Accordingly, to the extent BSM breached its obligations under the policy, there is no coverage.

## REQUESTED RELIEF

**WHEREFORE,** Kinsale respectfully requests this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Excess Policy;

b. Declare that Kinsale has no obligation to indemnify BSM under the Excess Policy;

c. Award Kinsale all costs it incurred to prosecute this action; and

d. Award Kinsale such other relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

 /s/ *Christopher M. Harper*_____
JOHN L. MULLEN #22994
CHRISTOPHER M. HARPER #23273
8900 Ward Parkway
Kansas City, Missouri  64114
(816) 421-7100
(816) 421-7915 (fax)
*jmullen@fsmlawfirm.com*
*charper@fsmlawfirm.com*
**Attorney for Kinsale Insurance Company**